UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| ASHLI CLARISSA ASHLEY,<br><br>  Plaintiff,<br><br>  v.<br><br>CAROLYN W. COLVIN,<br><br>  Defendant. | Case No. 12-cv-05828-NJV<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 18, 25 |

Plaintiff Ashli Clarissa Ashley applied for Supplemental Security Income ("SSI") benefits, claiming she was unable to work because of a number of conditions, including depression, anxiety and post-traumatic stress disorder. *See* Administrative Record ("AR") 153-160. Her claim was denied initially and on reconsideration. AR at 71-73, 78-83. Plaintiff requested a hearing before an administrative law judge ("ALJ"), which took place on September 21, 2011. AR 32-67. The ALJ denied benefits, and the Social Security Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner of Social Security. *See* AR 1-3. Plaintiff timely filed this appeal of the Commissioner's final decision to this court. All parties have consented to this court's jurisdiction. *See* Doc. Nos. 4 & 7. The court therefore has jurisdiction to decide the parties' cross-motions for summary judgment.

For the reasons stated below, the court will deny Plaintiff's motion for summary judgment and grant Defendant's cross-motion for summary judgment.

## LEGAL STANDARDS

The Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). A district court has a limited scope of review and can only set

aside a denial of benefits if it is not supported by substantial evidence or if it is based on legal error. *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 979 (9th Cir. 1997). "In determining whether the Commissioner's findings are supported by substantial evidence," a district court must review the administrative record as a whole, considering "both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). The Commissioner's conclusion is upheld where evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

## BACKGROUND

**A. Summary of Medical Evidence Relevant to Plaintiff's Appeal.**

Plaintiff underwent a comprehensive mental health examination on March 3, 2006, after attempting to commit suicide. AR 242. She was 16 years old. The provider noted a history of methamphetamine and marijuana use, but Plaintiff denied current usage. The provider noted that Plaintiff "has been experiencing significant impairment in social and academic functioning … Client meets criteria for Adjustment Disorder with Mixed Disturbance of Emotions and Conduct-Chronic." AR 242. The provider further noted a history of "intermittent individual and family counseling" in prior years. AR 243. The notes from the exam reflect that Plaintiff was oriented as to person, place, time and situation; demonstrated appropriate rapport, appearance, affect (though expansive), speech, thought content and process; anxious mood; poor insight and judgment; no reported hallucinations; agitation; and good memory. AR 244. The notes from the suicide risk assessment reflect that Plaintiff was sad and anxious, but able to cope with her symptoms. *Id*. Plaintiff's GAF was 40.[1] AR 245. The provider also rated Plaintiff's areas of functional

---

[1] "The GAF is a numeric scale ranging from zero to one hundred, which is used to rate social, occupational and psychological functioning 'on a hypothetical continuum of mental health-illness.' *Diagnostic and Statistical Manual of Mental Disorders*, 32 (4th ed. Am. Psychiatric Ass'n. 1994) ('DSM-IV'). The DSM-IV states that Axis V . . . is 'for reporting the clinician's judgment of the individual's overall level of functioning.'" *Nguyen v. Astrue*, 179 Soc. Sec. Rep. Serv. 198, *61 (N.D. Cal. 2012). Limitations decrease as the GAF score increases. A "GAF score

2

impairment: the community-related areas were all moderately impaired; financial and relationship with others were severely impaired; physical and emotional health were extremely impaired. AR 246.

Plaintiff attended outpatient mental health services from December 8, 2006 through July 2, 2007. AR 261-275. Plaintiff attended weekly counseling sessions to reduce her marijuana use, decrease her angry outbursts, and develop social and communication skills.

At a February 13, 2007 mental status examination, Plaintiff was oriented as to person, place, time and situation; her rapport, appearance, affect (though labile), speech, thought content and process were all appropriate; she was depressed and her mood was irritable; she had poor insight and judgment; no reported hallucinations; she was agitated and had good memory. AR 250-51. She was depressed, anxious, with intermittent inability to cope. AR 251. She was diagnosed with Adjustment Disorder with Mixed Disturbance of Emotions and Conduct-Chronic. *Id*. Her GAF was 52.[2] AR 252. Current areas of functional impairment: community-living and participation, moderate; community contribution, extreme; relationship with others, extreme; physical and emotional health, severe. AR 252.

On March 20, 2007, a mental health provider from the Department of Health and Human Services ("DHHS") noted that Plaintiff was not compliant with medication; her GAF was 57. AR 273.

Plaintiff violated the terms of her probation in July 2007 and was arrested. She was "[u]pset at booking and scored high on Maysi for depression and suicide." AR 275.

Between July 24, 2007 and November 9, 2007, Plaintiff received inpatient treatment at a mental health facility. AR 276-289. Candice Campbell, ASW, diagnosed Adjustment Disorder with Mixed Disturbance of Emotions and Conduct-Chronic; Plaintiff's GAF at admission was 52;

---

of 31-40 reflects severe impairment and indicates behavior 'considerably influenced by delusions or hallucinations or serious impairment in communication or judgment (e.g. sometimes incoherent, acts grossly inappropriately, suicidal preoccupation) or inability to function in almost all areas (e.g., stays in bed all day, no job, home, or friends).'" *Magnuson v. Astrue*, 2011 U.S. Dist. LEXIS 11178, *11-*12 (N.D. Cal. Sept. 29, 2011).

[2] A GAF of 50 "reflects a serious limitation on a claimant's ability to perform basic life tasks." *Nguyen*, 179 Soc. Sec. Rep. Serv. 198, *61.

at discharge, it was 58. AR 276, 291. Plaintiff's counselor focused on anger control, anxiety, and coping skills. Plaintiff participated in group therapy.

After her release from residential treatment, Plaintiff continued to receive outpatient services from Campbell. Campbell noted Plaintiff's depressive feelings and her relapse in marijuana use. AR 294, 296.

Plaintiff's work experience is limited. She held two seasonal positions as a cashier working for a fast food restaurant and a retail store. Plaintiff had trouble dealing with difficult customers; she was not asked to become a permanent employee. She last worked in December 2007. AR 35-37, 57-62.

In February 29, 2008, Plaintiff underwent another comprehensive mental health assessment. "Claimant has ongoing periods of time feeling down, guilty, and tired. However, [claimant] does not report enough symptoms to meet [Major Depressive Disorder] . . . . [Claimant] meets criteria for Depressive D/O, NOS. . . . [Claimant]'s mood appears within normal range." AR 254. The mental status exam documents that Plaintiff's thought content and process were appropriate; memory appeared grossly intact; insight was good and judgment was fair; no gross cognitive deficits were noted; her behavior and appearance were appropriate; her mood neutral; affect was appropriate; speech was coherent. The notes from her suicide risk assessment reveal Plaintiff was depressed, anxious with intermittent inability to cope; and had chronic grief and sadness. AR 257. She was diagnosed with depressive disorder not otherwise specified. AR 258. Plaintiff's GAF was 50; her highest GAF in the past year was 55. She was severely functionally impaired in her relationships with others. AR 259.

Plaintiff was arrested after testing positive for marijuana in August 2008 and incarcerated. Campbell visited Plaintiff in jail and noted she was "adjusting well . . . 'everyone loves me.' . . . She appeared in good spirit." AR 318. The following week, Plaintiff was sad, afraid of being alone, and uncomfortable. AR 319.

On September 19, 2008, Campbell completed a treatment summary for Plaintiff. AR 321. She noted that Plaintiff had "earned her way off probation and no longer wants to receive services from primary clinician at this point." AR 321. She diagnosed depressive disorder, and noted that

4

1   no medications were utilized during treatment.  Plaintiff's GAF was 55; her prognosis was

2   "good."  *Id*.³  She recommended that Plaintiff continue AOD treatment for continued recovery.

3         Plaintiff visited Dr. Frances Day on December 7, 2009 for anxiety and depression; she was

4   prescribed anti-depressant medications.  Plaintiff never returned to Dr. Day and had no further

5   contact with her.  AR 348-350.

6         In connection with her application for SSI benefits, Plaintiff underwent a comprehensive

7   psychiatric evaluation with Dr. Paul Butler on June 19, 2010.  Dr. Butler reported that Plaintiff

8   subjectively listed her level of depression as 9 out of 10, had zero energy, and slept 1.5 hours out

9   of eight each night.  AR 365.  Plaintiff was taking Prozac, methadone and Klonopin.  Plaintiff

10  reported four suicide attempts in 2002-2003.  Dr. Butler noted that Plaintiff was appropriately

11  dressed; cooperative and conversant; her speech was clear and her thoughts linear; her mood was

12  depressed, worried, sad, low energy, fearful and anxious.  Plaintiff did well on both long and short

13  term memory tasks; could do simple arithmetic; appeared to have fair concentration and fair

14  judgment.  AR 367-68.  Dr. Butler diagnosed major depressive disorder, recurrent, severe, with

15  psychotic symptoms, anxiety disorder NOS, and PTSD.  AR 368.  Plaintiff's GAF was 55.  Dr.

16  Butler opined that Plaintiff was "likely to have problems performing simple as well as complex

17  tasks. . . has a history of having problems with accepting instructions from supervisors and

18  problems working with the public . . . is likely to need help in order to perform work on a

19  consistent basis[;] is likely to have problems maintaining regular attendance in the workplace[;] is

20  unlikely to be able to complete a normal workday without interruptions from her psychiatric

21  condition[; and] is unlikely to be able to manage stress effectively in the workplace."  AR 368.  He

22  noted Plaintiff's tearfulness throughout the interview and opined that, while it "is unlikely [she

23  would] be able to maintain herself in a job situation[, t]he claimant's condition is treatable, and

24  with the proper treatment, she is likely to see a significant reduction in her symptoms within a six-

25  month period."  AR 368.

26        Plaintiff quit methamphetamines and alcohol on June 26, 2010.  AR 45.

---

³ A GAF score of 55-65 "indicates mild to moderate symptoms." *Keyser v. Comm'r of SSA*, 648 F.3d 721, 727 (9th Cir. 2011).

A July 16, 2010 DHHS outpatient services progress note documents that Plaintiff requested services because of anxiety, not sleeping well, and depressed mood. AR 466. Plaintiff reported that she was residing in a clear and sober facility "trying to be sober from a 4 month binge of meth." AR 466. Plaintiff's GAF was 65; she was diagnosed as experiencing amphetamine withdrawal. AR 469.

Lisa Hoyt, FNP, noted on April 15, 2011 that Plaintiff had been clean for 10 months from methamphetamines. AR 474. Hoyt also noted that Plaintiff was attending weekly parenting and AOD [alcohol and other drugs education] classes. AR 474. Plaintiff wanted a provider to evaluate the safety of taking anti-depressants during her pregnancy. AR 475.

On July 1, 2011, Plaintiff visited an OB/GYN. AR 493. She was "tearful and anxious[;] began asking about antidepressant medication[;] did have a counseling appointment but 'forgot'[;] Attends AOD at the tribal center . . . has a counselor Carly from Faith Church[;] declines medication." Plaintiff mentioned that she thought about suicide, but because she was pregnant did not think she would do it; the provider noted that Plaintiff had no real plan for suicide in place, but referred Plaintiff to a counselor.

The AR includes a behavioral health intake summary by Lezlie Scaliatine, Psy.D, dated July 21, 2011, which notes that Plaintiff reported depression and anxiety, and had been sober for 13 months. "Patient would like help w/ mood stabilization, and improving communication skills." AR 490. Dr. Scaliatine notes that "without care, patient's level of daily functioning will be severely, negatively impacted." AR 490. Dr. Scaliatine prescribed 2 visits per month for 3-6 months. AR 490. Plaintiff only saw Dr. Scaliatine twice. AR 41. The psychologist "just provide[d her] an ear to listen." *Id*.

**B. Summary of Plaintiff's Testimony.**

Plaintiff described her severe social anxiety and the fraught nature of her relationships with her family, including her son. She had been prescribed Lorazepam, Clonazepam and Klonopin, but stopped taking her medications during her pregnancy. She testified that these medications helped "quite a bit" with her anxiety, but exacerbated her outbursts of anger up to four or five times a week. AR 42-43. She described how difficult it was to get out of bed when she was

depressed, even when she was on medication. AR 44. After quitting methamphetamines and alcohol in June 2010, Plaintiff experienced strong withdrawal symptoms for about five months, but her depression "definitely improved a great deal since there's been no drugs in my life." AR 46. When she was using "I was just so low and down and depressed with life in general and all I would do is feed myself more drugs." AR 46. Nonetheless, she still has days now where she stays in bed. AR 49. She gets very frustrated with her son about once a week. AR 52. Plaintiff plans to continue therapy "because it does help" and intends to go back on mood stabilizers after she gives birth to her child. AR 56.

Plaintiff takes care of her son several days a week, but testified that she usually does so with the help of her mother (AR 49-50), and that it is "more difficult" for her to do so alone (AR 52). Plaintiff gets frustrated easily. AR 52-53.

Plaintiff attends a small church because people scare her; she has refused to take her son into "Bounce-a-Palooza" in the mall when there are too many people there. AR 59. She does not go grocery shopping. AR 60. Plaintiff explained that she was able to maintain her cashier positions despite her social anxiety because at the time she held those jobs, "I was clean and sober" and had a very supportive mentor. *Id*. Now, she feels that she lacks adequate support.

**C. The ALJ's Application Of The Five-Step Sequential Analysis for Evaluating Plaintiff's SSI Claim.**

To prevail on her claim for SSI benefits, Plaintiff must demonstrate a medically determinable physical or mental impairment that prevents her from engaging in substantial gainful activity, and which is expected to result in death or to last for a continuous period of at least twelve months. *Reddick*, 157 F.3d at 721. The impairment must render her incapable of performing any substantial gainful employment that exists in the national or local economy. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

The Social Security Regulations set out a five-step sequential analysis for evaluating a claimant's application for SSI disability benefits. *See* 20 C.F.R. § 416.920(a)(4); *Tackett*, 180 F.3d at 1098. If a claimant is found to be "disabled" or "not disabled" at any of these steps, the ALJ need not consider the remaining steps. 20 C.F.R. § 416.920(a)(4). The ALJ here applied the

five steps to Plaintiff's claim as follows:

In the first step, the ALJ must determine whether the claimant is currently engaged in substantially gainful activity. 20 C.F.R. § 416.920(a)(4)(i). If so, the claim is denied. Here, the ALJ found that Plaintiff had not engaged in gainful activity since December 23, 2009. AR 18. Plaintiff does not challenge this finding.

The second step requires the ALJ to determine whether the claimant has a "severe" impairment which significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 416.920(a)(4)(ii), (c). If the ALJ concludes that the claimant does not have a "severe" impairment, the claimant is not "disabled" and his claim is denied. *Id*. Here, the ALJ found that Plaintiff suffered from a number of severe impairments, including major depressive disorder, anxiety disorder not otherwise specified, and PTSD. AR 18.[4] Plaintiff does not challenge this finding.

The third step requires the ALJ to determine whether the impairment meets or equals the criteria of an impairment listed in the relevant regulation. 20 C.F.R. § 404, Subpt. P, App. 1; 20 C.F.R. § 416.920(a)(4)(iii). Where the impairment at issue involves a claimant's mental health, the ALJ must follow a special technique to evaluate the claimant's symptoms and rate her functional limitations. 20 C.F.R. § 416.920a. The ALJ must determine whether the claimant meets the criteria listed under paragraphs A and B, and where appropriate, C, of each applicable listed mental disorder. Here, the ALJ evaluated whether Plaintiff met the criteria listed under paragraphs A and B for listings 12.04 (Affective Disorders) and 12.06 (Anxiety Disorders). AR 20.[5] Reviewing the evidence in the AR, the ALJ found that Plaintiff suffered mild restrictions in her activities of daily living, moderate restrictions in maintaining social functioning, and moderate restrictions in maintaining concentration, persistence, or pace. AR 19-20. The ALJ also found

---

[4] In reaching this finding, the ALJ rejected the opinion of a state agency reviewing psychologist, who had indicated that Plaintiff's mental impairments were not severe. The ALJ found that the reviewing psychologist's opinion was not consistent with the evidence in the record, and gave little weight to the psychiatric review form the reviewing psychologist completed.

[5] Although Plaintiff's application for SSI benefits clearly mentioned depression, anxiety, and PTSD, the reviewing psychologist failed to evaluate Plaintiff under the most relevant listings (12.04 (Affective Disorders) and 12.06 (Anxiety Disorders)). *See* AR 409-419. The ALJ nonetheless evaluated Plaintiff under both listings 12.04 and 12.06.

that Plaintiff had experienced "no episodes of decompensation . . . of extended duration." AR 20. The ALJ then considered whether the paragraph C criteria for listing 12.04 and 12.06, and found that Plaintiff did not meet them. *Id*. The ALJ concluded that Plaintiff's mental impairments, considered singly or in combination, did not meet or medically equal the criteria for the conditions listed at 12.04 or 12.06. Plaintiff does not challenge this finding.

Before proceeding to the fourth step, the ALJ must evaluate the claimant's residual functional capacity ("RFC"). The ALJ took into account Plaintiff's testimony, a statement from her mother, the documents in the record, and the opinion of Dr. Butler. AR 21-23. The ALJ found that Plaintiff had the RFC to perform a full range of work at all exertional levels, but was limited to jobs involving only simple one- to two-step instructions and occasional contact with supervisors, co-workers, and the public. AR 21. The ALJ found that Plaintiff's statements regarding the intensity, persistence and limiting effects of her symptoms were not entirely credible, and discounted the statements to the extent they were inconsistent with the RFC determination. AR 22. Specifically, the ALJ found that there were few objective findings to support Plaintiff's testimony that she could not work because of symptoms associated with her anxiety and depression: treating physicians described Plaintiff as cooperative and did not note any significant anxiety or difficulties with concentration. *Id*. The ALJ also noted that Plaintiff had only attended two mental health appointments between July 2010 and July 2011, and found that her failure to seek regular treatment suggested that her mental conditions were neither as severe or as limiting as she claims. The ALJ also considered the opinion of Dr. Butler, but gave it little weight. AR 23. Based on the fact that Plaintiff had friends and spent time with family, the ALJ concluded that Plaintiff was "able to get along with others" and thus was less limited in her social functioning than Dr. Butler found. The ALJ recognized that Plaintiff did experience anxiety in social situations and had difficulty controlling her anger at times, thus the ALJ found it reasonable to limit Plaintiff to "occasional interaction with others." AR 23. The ALJ found "no evidence to support Dr. Butler's determinations regarding the claimant's ability to handle work stress, complete a workday, or maintain workplace attendance;" that Dr. Butler "did not explain why he impose[d] these limitations; and that the evidence of record did not support Dr. Butler's opinion.

9

*Id.* Plaintiff challenges this finding.

Then, in the fourth step, the ALJ must determine whether the claimant has sufficient residual functional capacity to perform her past work. 20 C.F.R § 416.920(a)(4)(iv). If so, the claimant is not "disabled" and the claim must be denied. *Id.* Here, the ALJ found that Plaintiff had no past relevant work. AR 23. (During the hearing, the ALJ nonetheless asked the vocational expert whether someone with Plaintiff's RFC could perform Plaintiff's prior occupations of fast food cashier and retail cashier. The expert testified that she could not, "primarily due to the need to have at least frequent if not constant contact with the public." AR 62-63.) Plaintiff does not challenge this finding.

If the claimant proves that she cannot perform past work, or if there is no past relevant work, the burden shifts to the commissioner in the fifth step of the analysis to establish that the claimant can perform other substantial gainful work. 20 C.F.R. § 416.920(a)(4)(v). If the ALJ fails to meet this burden, the claimant must be found disabled. *Id.* Based on the testimony of a vocational expert, the ALJ found that a person of Plaintiff's age, education, work experience and RFC could perform work existing in significant numbers in the national economy. AR 24. Specifically, the ALJ found that Plaintiff could perform the requirements of a hand packager and small products assembler. *Id.* Plaintiff also challenges this finding.

Accordingly, the ALJ found that Plaintiff was "not disabled."

## DISCUSSION

### A. Plaintiff's Contentions On Appeal.

Plaintiff asks the court to reverse the ALJ's denial of SSI disability benefits on two grounds. First, she argues that the ALJ erred in giving "little weight" to the opinion of the psychological consultative examiner, Dr. Butler, in assessing Plaintiff's RFC. Second, she argues that the ALJ erred by failing to take into account a hypothetical limitation Plaintiff had posed to the vocational expert. (Plaintiff raised a third argument in her opening brief, but withdrew it in her reply. *See* Doc. No. 26 at 5.)

**B. The ALJ's Evaluation Of Dr. Butler's Report.**

**1. The ALJ did not err in placing little weight on Dr. Butler's report.**

Dr. Butler was the only examining physician who offered an opinion regarding Plaintiff's ability to work.[6] As described above, Dr. Butler opined that as a result of her mental impairments, Plaintiff was "unlikely" to be able to maintain employment. Plaintiff argues that the ALJ erred in placing "little weight" on Dr. Butler's opinion. Because Dr. Butler's opinion was uncontradicted by that of any other physician in the record, the ALJ could only reject it by offering clear and convincing reasons for doing so. *See Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995) (ALJ must provide "clear and convincing" reasons for rejecting uncontradicted opinion of an examining physician). Based on the evidence in the record, the ALJ found that Plaintiff's anxiety, depression and PTSD were severe. But depression and anxiety do not *ipso facto* amount to an inability to work, and the ALJ found that Plaintiff could function better than Dr. Butler opined. The ALJ articulated clear and convincing reasons for her findings:

First, although the ALJ found evidence of an underlying impairment that reasonably could be expected to produce the alleged symptoms, she rejected Plaintiff's symptoms testimony in part and provided clear and convincing reasons for doing so. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (if a claimant has presented objective medical evidence of an underlying impairment that reasonably could be expected to produce the alleged symptoms and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of his symptoms only by offering specific, clear, and convincing reasons for doing so); *see also Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (court defers to the ALJ's credibility determination if it is supported by substantial evidence). The ALJ noted that Plaintiff had not sought mental health services with any regularity since 2008. *Id*. This unexplained failure to obtain treatment and follow prescribed treatment cast doubt on Plaintiff's testimony regarding the severity of her impairments:

---

[6] "Cases in this circuit distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester*, 81 F.3d at 834.

11

> An ALJ may consider an "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment" to determine the eligibility of the claimant's disability. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. [1996]). Notably though, "[f]ailure to follow a prescribed course of remedial treatment without good reason is grounds for denying an application for benefits." *Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir. 2004); *see also* 20 C.F.R. § 416.930(b) ("If you do not follow the prescribed treatment without a good reason, we will not find you disabled."). "While there are any number of good reasons for not [seeking treatment or following a prescribed course of treatment], a claimant's failure to assert one, or a finding by the ALJ that the proffered reason is not believable, can cast doubt on the sincerity of the claimant's pain testimony." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 2007) (internal citations omitted).

*Facen v. Colvin*, 2013 U.S. Dist. LEXIS 120370, *49-*50 (N.D. Cal. Aug. 23, 2013). Plaintiff explained that she did not want to take anti-depressant medication during her pregnancies, but did not explain why she did not resume talk therapy, despite finding it helpful. The AR documents several instances where Plaintiff initiated contact with a provider to seek mental health treatment but did not actually pursue it. The last documented instance occurred in July 2011, when Dr. Scaliatine prescribed twice monthly mental health visits for Plaintiff. AR 490. Dr. Scaliatine noted that "without care, patient's level of daily functioning will be severely, negatively impacted." *Id*. Plaintiff only visited Dr. Scaliatine twice, and did not explain why she failed to continue with this treatment. At her hearing, Plaintiff reiterated that she wanted to resume treatment because she had found it helpful.

The ALJ also discounted Plaintiff's symptoms testimony because Plaintiff's mental status examinations were all typically normal aside from disturbance in mood and affect; Plaintiff had not discussed her problems getting out of bed with her doctors; and none of her providers had noted significant anxiety or difficulties with concentration. AR 22. Although the ALJ found that Plaintiff's mental impairments were severe, and found that Plaintiff had moderate difficulties with regard to concentration, persistence, or pace, she found there were "few objective findings" to support Plaintiff's testimony that she could not work because of symptoms associated with her depression and anxiety. These were all clear and convincing reasons for discounting Plaintiff's testimony concerning the extent and severity of her symptoms.

Second, Dr. Butler's opinion was in substantial part based on Plaintiff's affect during the

examination, as well as Plaintiff's self-reported symptoms. *See* AR 365-68. The clear and convincing reasons the ALJ used in rejecting Plaintiff's symptoms testimony therefore also support the ALJ's rejection of Dr. Butler's opinion to the extent it relies on Plaintiff's affect and self-reported symptoms.

Third, the ALJ found that Dr. Butler's opinion was inconsistent with his own objective findings: Dr. Butler noted that Plaintiff had good memory and fair concentration, was able to complete mental calculations without difficulty, was conversant, and had relationships with friends and family. These observations by Dr. Butler suggested to the ALJ that Plaintiff "is capable of carrying out some instructions" and "is able to get along with others and is less limited in her functioning than Dr. Butler found." AR 23. In contrast to Dr. Butler's assessment, the ALJ referenced the July 16, 2010 DHHS note, which evaluated Plaintiff's GAF score at 65. The ALJ noted that "a GAF score of 65 is consistent with some mild symptoms or some difficulty in social or occupational functioning." AR 22. The ALJ also found that Dr. Butler had failed to explain how he reached the severe limitations he ascribed to Plaintiff. AR 23.

Although the evidence with regard to Plaintiff's anxiety and depression is susceptible to more than one rational interpretation, the ALJ articulated clear and convincing reasons, supported by substantial evidence, for giving "little weight" to Dr. Butler's opinion. The court must affirm this aspect of the decision. *See Burch*, 400 F.3d at 679 ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

**2. If the ALJ did err in placing little weight on Dr. Butler's report, the error was harmless.**

Even if the ALJ did not provide sufficiently "clear and convincing" reasons for discounting Dr. Butler's opinion, any error is harmless. *See Lockwood v. Comm'r of Soc. Sec.*, 616 F.3d 1068, 1071 (9th Cir. 2010) (even where an ALJ has erred, courts will uphold decision of Commissioner of Social Security if error is harmless); *see also Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) ("an error is harmless so long as there remains substantial evidence supporting the ALJ's decision and the error does not negate the validity of the ALJ's ultimate conclusion. . . . [I]n each case we look at the record as a whole to determine whether the error alters the outcome of the

case") (internal citation and quotation omitted).

The AR includes numerous records from Plaintiff's treating mental health care providers over the years. These records constitute substantial evidence supporting the ALJ's finding that Plaintiff is not as limited as Dr. Butler's report suggests: Plaintiff participated in group therapy, had friends and attended church recovery groups, got along well with others in jail, was able to care for her child (with the help of relatives), worked her way off probation, lived with her mother-in-law, maintained a relationship with her mother, and attended weekly parenting and AOD classes. Throughout the years, Plaintiff's mood appeared within normal range even though she was depressed, her thought process and content were always appropriate, and her speech was always coherent. Plaintiff underwent comprehensive mental health assessments in March 2006, February 2007 and February 2008. Her GAF at the first evaluation (immediately after a suicide attempt) was 40; at the second it was 52; and at the third it was 50. In February 2008, an evaluator determined that Plaintiff did not have enough symptoms to warrant a diagnosis of Major Depressive Disorder. After Plaintiff completed several months of inpatient treatment in 2008, her social worker noted that Plaintiff's GAF was 55 and that her prognosis was "good." After Plaintiff quit methamphetamines and alcohol, her treater assessed Plaintiff's GAF at 65 when. As noted above, a GAF score between 55 of 65 indicates "mild to moderate symptoms."

Moreover, there is substantial evidence in the record establishing that Plaintiff's impairments can be controlled effectively with treatment. *See Warre v. Comm'r of Soc. Sec.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits"); *see also Thomas v. Astrue*, 2011 U.S. Dist. LEXIS 32342, *10-*11 (N.D. Cal. Mar. 28, 2011) (ALJ properly discounted opinions of physicians who met with patient early in treatment, and because plaintiff's mental health had improved: "improvement of Plaintiff's impairment prior to the twelve month durational requirement . . . is a legitimate reason to give greater weight to more recent medical opinions"). In 2008, after Plaintiff completed several months of inpatient therapy, her treater opined that her prognosis was "good." When he examined Plaintiff in 2010, Dr. Butler opined that, with "proper treatment" Plaintiff would experience a "significant reduction" in symptoms

14

within six months.  Plaintiff testified that therapy "does help," that medication helped stabilize her anxiety, and that she wanted to resume taking anti-depressants after the birth of her child.  Thus, there is substantial evidence in the record that, with treatment, Plaintiff's symptoms would improve significantly.  Plaintiff did not address this argument after Defendant raised it in her opposition brief.  *See* Doc. No. 25 at 3 & Doc. No. 26 at 1-3.

Finally, there is substantial evidence in the record that Plaintiff's depression and anxiety improved substantially after she stopped using methamphetamines on June 26, 2010.  In July 2010, after she had been sober for 1 month, Plaintiff's GAF score had increased to 65.  During the hearing, Plaintiff testified that her depression "definitely improved a great deal since there's been no drugs in my life."  Several of the medical records Plaintiff cites in her papers, including Dr. Butler's examination report, date from before Plaintiff's sobriety, and therefore it would be legitimate to give those pre-sobriety records less weight.  Plaintiff's attempts to dismiss the post-sobriety records are not persuasive.  For example, Plaintiff argues that the ALJ "incompletely cites" records from the July 2010 appointment by failing to mention that Plaintiff was extremely upset because she suspected her young son had been molested.  Doc. No. 26 at 3.  Rather than support her argument, the fact that Plaintiff was evaluated with a GAF of 65 despite this upsetting event suggests that Plaintiff was managing her symptoms better than she had in the past.  Plaintiff also was "still dealing with the side effects of her abstention from methamphetamines" at the time.  AR 469; *see also* AR 466 (diagnosing methamphetamine withdrawal).

Given this substantial evidence, the court finds that any error in the weight the ALJ assigned to Dr. Butler's opinion was harmless.

**C. The ALJ Did Not Err In Refusing To Adopt Plaintiff's Hypothetical Limitations.**

During the hearing, Plaintiff elicited testimony from the vocational expert that someone who was off task five to ten percent of the time would not remain employed.  AR 65-66.  Plaintiff now argues that the ALJ erred because she "failed to appropriately consider the vocational expert's findings" that, according to Plaintiff, established she could not remain employed.  Doc. No. 18 at 8.  Plaintiff's argument lacks merit.

The ALJ recognized that Plaintiff had moderate difficulties with regard to concentration,

15

persistence, or pace, but the ALJ did not find that Plaintiff would be off task five to ten percent of the time.[7] On the contrary, she cited records to support her finding that Plaintiff had "good memory and fair concentration, and was able to complete mental calculations without difficulty" and performed essentially normally on her mental status exams. The ALJ determined that Plaintiff had the RFC to perform a full range of work at all exertional levels, but was limited to jobs involving only simple one- to two-step instructions and occasional contact with supervisors, co-workers, and the public. The ALJ ascribed these limitations to Plaintiff because, "given her mood disturbances, it is likely that she will struggle to perform complex instructions, but her performance on mental status tasks indicates that she can complete those that are simpler. . . . She does experience anxiety in social situations and has difficulty controlling her anger at times; thus, it is reasonable to limit her to occasional interactions with others." AR 23. The ALJ specifically rejected the limits suggested by Dr. Butler regarding Plaintiff's inability to complete a work day or maintain workplace attendance. *Id*.

At the hearing, the ALJ asked a vocational expert whether a person with Plaintiff's age, education, work experience, when limited to a one or two-step simple instruction job with occasional contact with supervisors, public and co-workers, could perform certain occupations that exist in significant numbers in the national economy. Based on the limitations articulated by the ALJ, which were supported by substantial evidence in the record, the vocational expert testified that a claimant with that profile could perform the requirements of two occupations that existed in significant numbers in the economy. Accordingly, the ALJ found that Plaintiff was not disabled.

While it reflected the limitations Dr. Butler articulated in his report, Plaintiff's hypothetical to the vocational expert did not reflect the limitations the ALJ found were supported by substantial evidence in the record. "An ALJ is free to accept or reject restrictions in a hypothetical question that are not supported by substantial evidence." *Osenbrock v. Apfel*, 240 F.3d 1157, 1164-65 (9th Cir. 2001) (citing *Magallanes v. Bowen*, 881 F.2d 747, 756-57 (9th Cir. 1989)); *see also Rollins v.*

---

[7] Defendant also points out that Plaintiff cites no evidence showing that she would be off task for any amount of the day. *See* Doc. No. 25 at 4. Plaintiff only responds with conjecture, not evidence. *See* Doc. No. 26 at 4-5.

*Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("Because the ALJ included all of the limitations that he found to exist, and because his findings were supported by substantial evidence, the ALJ did not err in omitting the other limitations that Rollins had claimed, but had failed to prove"). It was not error to exclude these un-established hypothetical limitations in the decision.

## CONCLUSION

For the reasons stated above, the court denies Plaintiff's motion for summary judgment and grants Defendant's motion for summary judgment.

The court shall enter a separate judgment.

The Clerk of the Court is directed to close the case.

**IT IS SO ORDERED**.

Dated: January 7, 2014

_____
NANDOR J. VADAS
United States Magistrate Judge